**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

HOWARD K. STERN,

         Plaintiff,

   vs.

RITA COSBY,
HACHETTE BOOK GROUP USA, INC., d/b/a
Grand Central Publishing, and
JANE and JOHN DOE,

       Defendants.

Case No: 1:07-cv-08536-DC

**MEMORANDUM OF LAW OF**
**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**
**AS *AMICUS CURIAE***

Thomas W. Ude, Jr.
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, Suite 1500
New York, NY  10005
Tel. (212) 809-8585

*Attorney for Amicus Curiae Lambda Legal*
*Defense and Education Fund, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

INTEREST OF AMICUS CURIAE ..............................................................................1

FACTUAL BACKGROUND ........................................................................................2

ARGUMENT ................................................................................................................3

I.   IT IS NOT DEFAMATORY PER SE TO DESCRIBE A PERSON AS GAY........................3

  A.  Designation of statements "imputing homosexuality" as defamatory per se
      impermissibly stigmatizes lesbians and gay men ...............................................7

  B.  New York Court of Appeals decisions are inconsistent with deeming it
      defamatory per se to describe a person as gay ...................................................9

  C.  Appellate Division decisions do not indicate that the Court of Appeals would
      consider statements describing a person as gay to be defamatory per se .........................10

    1.  Past decisions of the Appellate Division involving "imputation of
        homosexuality" did not take into account more recent developments .......................11

    2.  Decisions of the Appellate Division and other New York courts
        demonstrate that statements describing a man as gay can no longer be
        deemed defamatory per se ...........................................................12

  D.  Other persuasive authorities indicate that statements describing a person as
      gay are not defamatory per se ...................................................14

CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Albright v. Morton,*
  321 F. Supp. 2d 130 (D. Mass. 2004),
  *aff'd on other grounds sub nom. Amrak Prods., Inc. v. Morton,*
  410 F.3d 69 (1st Cir. 2005) ............................................................................8, 17

*Boehm v. Am. Bankers Ins. Group, Inc.,*
  557 So.2d 91 (Fla. Dist. Ct. App. 1990) ...................................................9

*Bowers v. Hardwick,*
  478 U.S. 186, 106 S. Ct. 2841 (1986) ........................................................7

*Braschi v. Stahl Assocs. Co.,*
  74 N.Y.2d 201 (1989) ..................................................................................10

*Bytner v. Capital Newspaper, Div. of Hearst Corp.,*
  112 A.D.2d 666 (3d Dep't 1985) ...............................................................4

*Cavallaro v. Pozzi,*
  28 A.D.3d 1075 (4th Dep't 2006) ..............................................................4

*Celle v. Filipino Reporter Enters., Inc.,*
  209 F.3d 163 (2d Cir. 2000) ......................................................................4

*Dally v. Orange County Publ'ns,*
  117 A.D.2d 577 (2d Dep't 1986) ..............................................................11

*Dellefave v. Access Temporaries, Inc.,*
  No. 99 CIV. 6098, 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) .................5

*Donovan v. Fiumara,*
  114 N.C. App. 524, 442 S.E.2d 572 (1994) ...............................................9

*E.B. v. Liberation Publ'ns, Inc.,*
  7 A.D.3d 566 (2d Dep't 2004) ..................................................................12

*Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni,*
  585 F. Supp. 2d 520 (S.D.N.Y. 2008) ...................................................6, 12

*Godfrey v. DiNapoli,*
  22 Misc. 3d 249 (Sup. Ct. Albany County 2008) .............................13, 15

*Godfrey v. Spano,*
  57 A.D.3d 941 (2d Dep't 2008) ................................................................15

## CASES

*Golden v. Paterson*,
    22 Misc. 3d 1127(A), 2008 WL 5672288
    (Sup. Ct. Bronx County Sept. 2, 2008) ....................................................................13, 14, 16

*Greenly v. Sara Lee Corp.*,
    No. CIV S-06-1775, 2008 WL 1925230 (E.D. Cal. Apr. 30, 2008) ...........................................8

*Hayes v. Smith*,
    832 P.2d 1022 (Colo. App. 1991) ...........................................................................................9

*Hernandez v. Robles*,
    7 N.Y.3d 338 (2006) ...................................................................................................2, 9-10

*Matter of Jacob*,
    86 N.Y.2d 651 (1995) ..........................................................................................................10

*Johnson v. Staten Island Advance Newspaper Inc.*,
    13 Misc. 3d 1215(A), 2004 WL 4986754
    (N.Y. City Civ. Ct. Richmond County July 23, 2004) .....................................................6, 16

*Kerrigan v. Comm'r of Pub. Health*,
    289 Conn. 135, 957 A.2d 407 (2008) ...................................................................................6

*Kimmerle v. N.Y. Evening Journal, Inc.*,
    262 N.Y. 99 (1933) ................................................................................................1, 4, 5, 13, 16

*Klepetko v. Reisman*,
    41 A.D.3d 551 (2d Dep't 2007) ..........................................................................................11

*Lawrence v. Texas*,
    539 U.S. 558, 123 S. Ct. 2472 (2003) .......................................................................... *passim*

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997) ..................................................................................................4

*Levin v. Yeshiva Univ.*,
    96 N.Y.2d 484 (2001) ..........................................................................................................10

*Lewis v. N.Y. State Dep't of Civil Service*,
    __ A.D.3d ___, 872 N.Y.S.2d 578 (3d Dep't 2009) ...................................................2, 13, 15

*Lewittes v. Cohen*,
    No. 03 Civ. 189, 2004 WL 1171261 (S.D.N.Y. May 26, 2004) ..............................................5

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) .......................................................................................................4, 12

# CASES

*Martinez v. County of Monroe*,
50 A.D.3d 189 (4th Dep't), *appeal dismissed*,
10 N.Y.3d 856 (2008) ................................................................................. 12-13

*Matherson v. Marchello*,
100 A.D.2d 233 (2d Dep't 1984) ....................................................................11

*Mencher v. Chesley*,
297 N.Y. 94 (1947) ................................................................................6, 11

*Michalski v. Home Depot, Inc.*,
225 F.3d 113 (2d Cir. 2000) .......................................................................5, 10

*Moricoli v. Schwartz*,
46 Ill. App. 3d 481, 361 N.E.2d 74 (1977) .............................................................9

*Nowark v. Maguire*,
22 A.D.2d 901 (2d Dep't 1964) .....................................................................11

*Palmore v. Sidoti*,
466 U.S. 429, 104 S. Ct. 1879 (1984) ..............................................................9, 16

*People v. Onofre*,
51 N.Y.2d 476 (1980) .............................................................................5, 9

*Privitera v. Town of Phelps*,
79 A.D.2d 1 (4th Dep't 1981), *appeal dismissed*,
53 N.Y.2d 796 (1981) ...............................................................................12

*Regehr v. Sonopress, Inc.*,
No. 2:99CV690K, 2000 WL 33710902 (D. Utah Apr. 14, 2000) ........................................ 8-9

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
42 N.Y.2d 369 (1977) ...........................................................................4, 5, 13

*Romer v. Evans*,
517 U.S. 620, 116 S. Ct. 1620 (1996) ............................................................ 2, 7-8

*Stein v. Trager*,
36 Misc. 2d 227 (Sup. Ct. Erie County 1962) ......................................................11

*Sydney v. MacFadden Newspaper Publ'g Corp.*,
242 N.Y. 208 (1926) ............................................................................6, 16

*Tourge v. City of Albany*,
285 A.D.2d 785 (3d Dep't 2001) ....................................................................12

**STATUTES**

Cal. Penal Code § 314..............................................................................................4

N.Y. Educ. Law § 313 ..........................................................................................14

N.Y. Exec. Law § 296............................................................................................14

N.Y. Penal Law § 245.00.........................................................................................4

N.Y. Penal Law § 485.00 *et seq.*..........................................................................14

N.Y. Pub. Health Law § 2805-q ...........................................................................14

N.Y. Pub. Health Law § 4201...............................................................................14

**OTHER AUTHORITIES**

Equality Forum, *Fortune 500 Project*,
    *available at* http://www.equalityforum.com/fortune500/index.cfm
    (last visited Mar. 13, 2009)...........................................................................15

Gay & Lesbian Leadership Institute, *Openly LGBT Elected or Appointed Officials*,
    *available at* http://www.glli.org/out_officials/officials_map
    (select North America, then New York) (last visited Mar. 13, 2009) ...................16

Rick Karlin, *One 'I Do' for Gay Marriage*,
    Times Union (Albany, N.Y.), June 20, 2007, at A1 ..............................................14

Lambda Legal et al., *Your Government Respects Your Marriage: Developments in*
    *New York State Agency Recognition of Same-Sex Couples' Out-of-State Marriages*,
    *available at* http://data.lambdalegal.org/publications/downloads/fs_your-government-
    respects-your-marriage.pdf
    (last visited Mar. 13, 2009)...........................................................................15

Richard Perez-Pena, *Bruno Agrees on Domestic Partner Benefits*,
    N.Y. Times, Jan. 20, 2001, at B4....................................................................15

*Amicus curiae* Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal") respectfully submits this memorandum of law concerning the disputed legal issue of whether New York law would deem defamatory per se statements falsely describing a person as gay.

## INTRODUCTION

In his complaint, Plaintiff Howard K. Stern claims that he was defamed per se by various statements in the book *Blonde Ambition*, written by Defendant Rita Cosby and published by Defendant Hachette Book Group.  Among other claims, Stern asserts that passages in *Blonde Ambition* that convey that he had sex with a man were defamatory per se.  To rule that the challenged statements could be defamatory per se, this Court would have to predict that the New York Court of Appeals would hold it publicly shameful and odious to be gay.  *See Kimmerle v. N.Y. Evening Journal, Inc.*, 262 N.Y. 99, 102 (1933).  This conclusion would be completely inconsistent with contemporary New York public policy and case law regarding gay men and lesbians, which accords these members of the community substantial legal respect, and indeed, *prohibits* treating them as shameful and odious.  Because New York law and public policy affirm that it is neither shameful nor disgraceful to be identified as lesbian or gay, it is not defamatory per se to describe someone as gay.

## INTEREST OF *AMICUS CURIAE*

On February 25, 2009, Lambda Legal submitted a letter requesting leave to file this brief, which the Court granted the same day.  Docket Entry (D.E.) 113.  Lambda Legal is a national organization, with thousands of New York members, dedicated to achieving full recognition of the civil rights of lesbians, gay men, bisexuals, transgender people and those with HIV through impact litigation and public policy work.  Since its founding in New York in 1973, and for more than 35 years, Lambda Legal has been advocating for equality for gay men and lesbians in New York and throughout the United States, and has been counsel or *amicus* in scores of cases

establishing the rights of gay men and lesbians in many areas.  *See, e.g., Lawrence v. Texas*, 539

U.S. 558, 123 S. Ct. 2472 (2003) (striking down consensual sodomy prohibitions as

unconstitutional); *Romer v. Evans*, 517 U.S. 620, 116 S. Ct. 1620 (1996) (striking down state

constitutional provision prohibiting anti-discrimination protections for gay and lesbian residents

as violative of federal constitution); *Hernandez v. Robles*, 7 N.Y.3d 338 (2006) (finding no

constitutional violation from denying right to marry to same-sex couples and holding that

legislature has plenary authority to grant right to marry*); Lewis v. N.Y. State Dep't of Civil

Service*, __ A.D.3d ___, 872 N.Y.S.2d 578 (3d Dep't 2009) (upholding government recognition

of out-of-state marriages of same-sex couples).

Lambda Legal submits this brief because the predicate finding necessary to recognition of

Plaintiff's defamation claim – that lesbians and gay men are the subject of public hatred, ridicule,

aversion or contempt – would have a harmful and stigmatizing effect on people who are gay and

lesbian.  A principle of law that would automatically award money damages to someone merely

for having been incorrectly described as gay is based on a flawed premise that is incompatible

with the many ways in which current New York law and public policy are committed to

affirming the rights and dignity of gay men and lesbians.

## FACTUAL BACKGROUND

In his complaint, Plaintiff groups passages from the book *Blonde Ambition* into "Libelous

Statements" ("Statements") that he claims were defamatory per se.  This memorandum addresses

issues pertaining to the passages identified in the Complaint (D.E. 1) as Statements 1 and 2.[1]

According to Statement 1, someone walked in on Plaintiff having a sexual encounter with

Larry Birkhead in the darkened bedroom of a private home in Los Angeles, and Anna Nicole

---

[1] Lambda Legal understands that the parties' memoranda concerning Defendants' pending motions address other issues, and that resolution of those issues may moot the issue of whether Statements 1 and 2 are defamatory per se.

2

Smith told two people that Plaintiff is gay.  Plaintiff alleges that Statement 1 is false because that incident never happened, he is not gay, and he never engaged in sexual activity with *any* man; and that Statement 1 is defamatory per se because it conveys that he "is homosexual" and "committed a criminal lewd act involving homosexuality by exposing himself in a place where others might be present who would be offended by such conduct."  Complaint ¶¶ 92-95**.**

According to Statement 2, Smith had a videotape of Plaintiff and Birkhead having sex. Plaintiff alleges that Statement 2 is false because he is not gay, he never engaged in sexual activity with a man, and no videotape exists of sexual activity between him and Birkhead; and that Statement 2 is defamatory per se because it conveys that he "engaged in a videotaped homosexual act."  Complaint ¶¶ 119-23**.**

## ARGUMENT

The New York Court of Appeals has never held that statements describing someone as gay are defamatory per se, and it is inconceivable that it would do so today.  The underlying question is not whether lesbians and gay men have attained full equality or whether anti-gay bias has been completely eradicated, but whether someone identified as gay would tend to be subjected to public hatred, contempt, ridicule or disgrace.  Because New York law and public policy compel the contrary conclusion, *amicus* respectfully urges this court to hold that Statements 1 and 2 are not defamatory per se as a matter of law.

## I.   IT IS NOT DEFAMATORY PER SE TO DESCRIBE A PERSON AS GAY

A plaintiff seeking to recover in libel (defamation in writing or print) must establish five elements:  (1) a written defamatory statement of fact concerning the plaintiff; (2) publication;

(3) fault; (4) falsity; and (5) special damages[2] or per se liability.  *See Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

Defamation – particularly defamation per se – is not about minor or trivial insults. "Written words, the effect of which is to invade privacy and to bring undesired notoriety, are without remedy, unless they also appreciably affect reputation. . . .  Reputation is . . . injured by words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society."  *Kimmerle v. N.Y. Evening Journal, Inc.*, 262 N.Y. 99, 102 (1933).  *See also Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (statement is "libelous or actionable [per se] without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society") (citations omitted). Defamation "necessarily . . . involves the idea of disgrace."  *Bytner v. Capital Newspaper, Div. of Hearst Corp.*, 112 A.D.2d 666, 667 (3d Dep't 1985) (citations omitted).

Plaintiff's primary claim concerning Statement 1[3] and Statement 2[4] is that they are defamatory per se because they convey that he is gay.  Those Statements are defamatory per se

---

[2] Special damages "contemplate 'the loss of something having economic or pecuniary value.'"  *Liberman v. Gelstein*, 80 N.Y.2d 429, 434-35 (1992) (citations omitted).

[3] A threshold legal question is whether a statement is capable of the defamatory meaning imputed to it.  *See Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (citations omitted) (applying New York law).  Statement 1 does convey that Plaintiff is gay, or perhaps bisexual – but does not reasonably convey that Plaintiff committed a crime, much less a crime serious enough that its accusation is defamatory per se.  The sexual activity allegedly occurred between two adults in the dark bedroom of a private home, which is criminal neither in California (where it allegedly happened) nor in New York.  *See* Cal. Penal Code § 314 (defining lewd conduct as exposing oneself "willfully and lewdly" in public place or where there are others present to be annoyed or offended); N.Y. Penal Law § 245.00 (defining public lewdness as lewd act committed in a private place must be readily observable and intended to be observed).  *See also Lawrence v. Texas*, 539 U.S. 558, 578, 123 S. Ct. 2472, 2484 (2003), (holding unconstitutional laws that criminalize private consensual adult sodomy).  Moreover, public lewdness is a Class B misdemeanor under New York law, N.Y. Penal Law § 245.00, which is not a serious enough crime for its accusation to be defamatory

(continued . . . )

only if being viewed as gay leads to "public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace." *See Kimmerle*, 262 N.Y. at 102; *Rinaldi*, 42 N.Y.2d at 379.

The New York Court of Appeals has not decided a case in which a person claimed to have been defamed per se by a statement incorrectly describing them as gay, and has never held that such statements were defamatory per se.

> Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law.  In determining how the Court of Appeals would rule on [a] legal question, the decisions of New York State's Appellate Division are helpful indicators.  The holding of "an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  Other data include relevant case law from other jurisdictions on the same or analogous issues, scholarly writings in the field, and any other resources available to the state's highest court.

*Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) (citations omitted).

In trying to ascertain whether the Court of Appeals would find it defamatory per se to describe someone as gay, judges of this court have expressed different conclusions.[5]  However,

---

(continued . . . )

per se.  *See Cavallaro v. Pozzi*, 28 A.D.3d 1075, 1077 (4th Dep't 2006) (Class B misdemeanor not sufficiently serious crime to support claim of defamation per se).

[4] In light of the fact that Plaintiff alleges that Statement 2 is false because he never engaged in sexual activity with any man and there is no videotape of sexual activity between him and Birkhead, the gravamen of Plaintiff's complaint appears to be that the alleged videotape was of sexual activity *with a man*.  Statement 2 could only be recognized as defamatory per se if *any* statement that someone engaged in a videotaped sexual act would be defamatory per se, which would be inconsistent with New York law protecting such conduct in private.  *See, e.g., People v. Onofre*, 51 N.Y.2d 476, 485 n.2 (1980) (concluding that statute criminalizing consensual sodomy laws were unconstitutional, and noting that one criminal defendant's participation in "the taking of photographs of himself while engaging in acts of sodomy" did not affect the secluded nature of the conduct, "which was done in defendant's own home free from any observation by the public").

[5] *Compare Lewittes v. Cohen*, No. 03 Civ. 189, 2004 WL 1171261, at *3 n.5 (S.D.N.Y. May 26, 2004) (dismissing case due to expired statute of limitations, but noting that "[g]iven welcome shifts in social perceptions . . . there is good reason to question the reliability of" precedents holding that "imputation of homosexuality" is defamatory per se) *and Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098, 2001 WL 25745, at *4 n.1(S.D.N.Y. Jan. 10, 2001) ("imputation of homosexuality" as defamation per se "in twenty-first century Manhattan amounts to little more than an historical oddity," but dismissing claim because allegations did not support such an imputation) *with*

(continued . . . )

persuasive data strongly suggests that the Court of Appeals today would hold that such statements are *not* defamatory per se.

"Whether language has [a defamatory] tendency depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place." *Mencher v. Chesley*, 297 N.Y. 94, 100 (1947). *Compare, e.g., Sydney v. MacFadden Newspaper Publ'g Corp.*, 242 N.Y. 208, 213-14 (1926) (citing cases establishing that it was libelous per se "to say a man is colored [sic] . . . [if] he happens to be a white man"); *with, e.g., Johnson v. Staten Island Advance Newspaper Inc.*, 13 Misc. 3d 1215(A), 2004 WL 4986754, at *6 (N.Y. City Civ. Ct. Richmond County July 23, 2004) (not defamatory to incorrectly identify race of an African-American man as white). The claims discussed in *Sydney* and *Johnson* demonstrate that it is contemporary public opinion that matters, not the opinion of a different time.

It is inconceivable that in 2009 the Court of Appeals would find that being described as gay or lesbian subjects a person to the kind of public animosity that justifies the statement's treatment as defamatory per se, given the widespread social acceptance of homosexuality and the many court decisions and legislative actions throughout New York affirming the civil rights of gay men and lesbians. As discussed below, significant developments within the past decade include, for example, the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 578, 123 S. Ct. 2472, 2484 (2003);[6] the enactment of laws protecting lesbians and gay men

---

(continued . . . )
*Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 549 (S.D.N.Y. 2008) ("imputation of homosexuality" is slanderous per se).
[6] *Lawrence* has been described as "a sea change in United States Supreme Court jurisprudence concerning the rights of gay persons." *Kerrigan v. Comm'r of Pub. Health*, 289 Conn. 135, 236, 957 A.2d 407, 467 (2008).

from discrimination and bias-motivated crime; court decisions affirming the respectable status of gay men and lesbians in other areas of public life; corporate policies demonstrating a commitment to equality for gay men and lesbians; and the presence of openly lesbian and gay public officials in elected and appointive government positions throughout New York.

### A. Designation of statements "imputing homosexuality" as defamatory per se impermissibly stigmatizes lesbians and gay men.

In *Lawrence*, the United States Supreme Court held that gay men and lesbians "are entitled to respect for their private lives" and that criminalizing their private consensual sexual conduct violates the Federal Constitution.  539 U.S. at 578, 123 S. Ct. at 2484.  The Court held that criminalizing consensual sodomy violates the Federal Due Process Clause, and overruled *Bowers v. Hardwick*, 478 U.S. 186, 106 S. Ct. 2841 (1986), noting that continuing *Bowers* as precedent would "demean[] the lives of homosexual persons."  539 U.S. at 575, 123 S. Ct. at 2482.  The Court explained that even though sodomy prohibitions were rarely enforced, their mere presence as law impermissibly stigmatized gay people.  "When homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination both in the public and in the private spheres."  *Id.*  As the Court found, "[t]he stigma this criminal statute imposes, moreover, is not trivial.  The offense, to be sure, is but a class C misdemeanor, a minor offense in the Texas legal system.  Still, it remains a criminal offense with all that imports for the dignity of the persons charged."  *Id.*

Even before *Lawrence*, the United States Supreme Court repudiated anti-gay animus as constitutionally repugnant, holding that the bare desire to harm lesbians and gay men was not even a legitimate or rational basis for government action.  *See Romer v. Evans*, 517 U.S. 620, 634, 116 S. Ct. 1620, 1628 (1996).  In *Romer*, the Court struck down a class-based amendment to Colorado's Constitution as a violation of the Equal Protection Clause of the U.S. Constitution

because the amendment was "born of animosity toward the class of persons affected," *id.*, and

the amendment "classifie[d] homosexuals not to further a proper legislative end but to make

them unequal to everyone else," *id.* at 635, 116 S. Ct. at 1629.

In a case closely on point, a Massachusetts federal district court ruled that, particularly

after *Lawrence*, describing someone as gay could no longer be deemed defamatory per se. *See*

*Albright v. Morton*, 321 F. Supp. 2d 130, 136-39 (D. Mass. 2004) (courts still deeming such

statements as defamatory per se relied on no-longer-valid criminal statutes and "fail[ed] to

incorporate more recent decisions recognizing homosexuals' equal rights") (citing *Lawrence*),

*aff'd on other grounds sub nom. Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005).  The

*Albright* court concluded that "[c]ontinuing to characterize the identification of someone as a

homosexual defamation *per se* has the same effect," *id.* at 137, as the criminalization of

consensual private sexual activity, which the Supreme Court in *Lawrence* found impermissibly

"demeans the lives of homosexual persons," *Lawrence*, 539 U.S. at 575, 123 S. Ct. at 2482.  The

court further explained that "[i]f this court were to agree that calling someone homosexual is

defamatory per se—it would, in effect, validate that sentiment and legitimize relegating

homosexuals to second-class status." *Albright*, 321 F. Supp. 2d at 138.  Noting that the category

"defamation per se" should be "reserved for statements linking an individual to the category of

persons 'deserving of social approbation' like a 'thief, murderer, prostitute, etc.,'" the court

stated that "[t]o suggest that homosexuals should be put into this classification is nothing short of

outrageous."  *Id.* at 139 (citation omitted).

Courts in many other jurisdictions likewise have held that falsely identifying someone as

gay or lesbian is not defamatory per se.  *See Greenly v. Sara Lee Corp.*, No. CIV S-06-1775,

2008 WL 1925230, at *8 & n.15 (E.D. Cal. Apr. 30, 2008); *Regehr v. Sonopress, Inc.*, No.

2:99CV690K, 2000 WL 33710902, at *4 (D. Utah Apr. 14, 2000); *Hayes v. Smith*, 832 P.2d

1022, 1023-25 (Colo. App. 1991); *Boehm v. Am. Bankers Ins. Group, Inc.*, 557 So.2d 91, 94 &

n.1 (Fla. Dist. Ct. App. 1990); *Moricoli v. Schwartz*, 46 Ill. App. 3d 481, 484, 361 N.E.2d 74, 76

(1977); *Donovan v. Fiumara*, 114 N.C. App. 524, 531, 442 S.E.2d 572, 577 (1994).

To hold otherwise, based on outdated prejudices about lesbian and gay individuals, would

impermissibly resurrect a government-opposed stigma that the Supreme Court has held should

not be perpetuated in our law. *Lawrence*, 539 U.S. at 575, 123 S. Ct. at 2482. *See also Palmore*

*v. Sidoti*, 466 U.S. 429, 433, 104 S. Ct. 1879, 1882 (1984) ("Private biases may be outside the

reach of the law, but the law cannot, directly or indirectly, give them effect.").

### B.   New York Court of Appeals decisions are inconsistent with deeming it defamatory per se to describe a person as gay.

Decades before *Lawrence* was decided, the New York Court of Appeals held that

criminalizing consensual sodomy was unconstitutional and recognized the fundamental right of

gay men and lesbians to engage in sexual intimacy. *See People v. Onofre*, 51 N.Y.2d 476, 494

(1980). It would be incongruous for the New York Court of Appeals now to hold that gay men

and lesbians are such objects of public hatred, ridicule and contempt that it is defamatory per se

to identify a person as gay.

Other decisions also demonstrate that the Court of Appeals does not view lesbians and

gay men to be held in such low regard. In *Hernandez v. Robles*, 7 N.Y.3d 338 (2006), a majority

of the Court of Appeals ruled that the state constitution is not violated by withholding the right to

marry to same-sex couples. Yet all members of the *Hernandez* court agreed that the Legislature

could or perhaps *should* amend the Domestic Relations Law to permit same-sex couples to

marry. *See id.* at 358-59 ("[T]he Legislature may . . . extend marriage or some or all of its

benefits to same-sex couples.") (plurality op.); *id.* at 379 ("It may well be that the time has come

for the Legislature to . . . consider granting these individuals additional benefits through marriage . . . .") (Graffeo, J., concurring); *id.* at 396 (Kaye, C.J., dissenting).

The decisions of the Court of Appeals interpreting rights of gay men and lesbians in other areas are similarly devoid of indicia that gay men and lesbians face societal contempt, ridicule or disgrace. *See, e.g., Levin v. Yeshiva Univ.*, 96 N.Y.2d 484, 496 (2001) (same-sex partners entitled to pursue claim under New York City Human Rights Law to receive same student housing as married couples); *Matter of Jacob*, 86 N.Y.2d 651, 656 (1995) (lesbian partner of child's biological mother who is raising child with biological parent can become child's second parent by means of adoption); *Braschi v. Stahl Assocs. Co.*, 74 N.Y.2d 201, 212-13 (1989) (same-sex life-partners entitled to same protections under rent control laws as spouses and other family members).

In each of these decisions, the Court of Appeals determined the rights of gay men and lesbians in some of the most important areas of life, and determined that sexual orientation is irrelevant to one's ability to participate in those aspects of society. The holdings and reasoning of these cases are irreconcilable with the findings necessary to conclude that "imputation of homosexual behavior" is defamatory per se.

### C. *Appellate Division decisions do not indicate that the Court of Appeals would consider statements describing a person as gay to be defamatory per se.*

Ordinarily, Appellate Division decisions are helpful indicators of how the Court of Appeals would rule on a legal question. *See Michalski*, 225 F.3d at 116. However, because the few decisions of the Appellate Division to address whether statements that "impute homosexual behavior" were defamatory per se did not consider the impact of recent decisions and other advances recognizing the improved status of gay men and lesbians, those decisions do not reliably indicate how the Court of Appeals would decide that question today. In contrast, other

Appellate Division and New York Supreme Court decisions *do* reflect the impact of developments that, taken together, would compel the Court of Appeals carefully to examine, and ultimately to reject, the premise underlying Plaintiff's defamation claim.  *See Mencher*, 297 N.Y. at 100 ("words, harmless in one age . . . may be highly damaging to reputation at another time").

1. **Past decisions of the Appellate Division involving "imputation of homosexuality" did not take into account more recent developments.**

The only Appellate Division decision containing an in-depth discussion of whether it was defamatory per se to describe someone as gay is more than 20 years old.[7]  *Matherson v. Marchello*, 100 A.D.2d 233, 241-42 (2d Dep't 1984).  The court noted that in 1984, "an increasing number of homosexuals [were] publicly expressing satisfaction and even pride in their status," but stated that it felt "constrained . . . *at this point in time*" to hold it was defamatory per se to say that a married man had a boyfriend because of the statement's "potential and probable harm."  *Id.* (emphasis added).[8]

Subsequent cases have cited *Matherson* or other decisions from earlier eras without discussing whether intervening developments after *Matherson* was decided in 1984 warranted a reevaluation of that court's conclusion concerning the status of lesbians and gay men.  Since 2000, only two Appellate Division cases have involved claims that statements "imputing homosexuality" were defamatory per se; both claims were rejected, albeit not because of a conclusion as to whether that "imputation" was defamatory per se.  *See Klepetko v. Reisman*, 41 A.D.3d 551, 552 (2d Dep't 2007) (citing *Matherson* and stating that "false imputation of

---

[7] The reported decisions involving such claims prior to *Matherson* contained little analysis and reached conflicting conclusions.  *Compare Stein v. Trager*, 36 Misc. 2d 227, 228 (Sup. Ct. Erie County 1962) (not slanderous per se to say that plaintiff was "homosexual" because it did not charge a crime) *with Nowark v. Maguire*, 22 A.D.2d 901, 901 (2d Dep't 1964) (slanderous per se to state, "You are both queers. Even your wife said you were odd and she was stuck with you. I'll take you to court for bothering my seven-year-old orphan.").

[8] Other decisions contemporary to *Matherson* reached the same conclusion without discussion.  *See, e.g., Dally v. Orange County Publ'ns*, 117 A.D.2d 577, 578 (2d Dep't 1986) (citing *Matherson*).

homosexuality is 'reasonably susceptible of a defamatory connotation'" but dismissing claim because statement "that the plaintiff lived together with another middle-aged man does not readily connote a sexual relationship"); *E.B. v. Liberation Publ'ns, Inc.*, 7 A.D.3d 566, 567 (2d Dep't 2004) (dismissing, as time-barred, libel claim based on use of plaintiff's photograph "to illustrate, advertise and market a homosexually-themed book").  Even the recent decision by another judge of this court relied largely on cases more than 20 years old in adding "'imputations of homosexuality' to the list of [the] types of statements that are per se slanderous."  *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 549 (S.D.N.Y. 2008).[9]

### 2. Decisions of the Appellate Division and other New York courts demonstrate that statements describing a man as gay can no longer be deemed defamatory per se.

Other recent decisions in the Appellate Division and Supreme Court analyzing public attitudes toward gay men and lesbians could not be reconciled with the conclusion that being identified as gay is defamatory per se.

In *Martinez v. County of Monroe*, 50 A.D.3d 189, 193 (4th Dep't), *appeal dismissed*, 10 N.Y.3d 856 (2008), the Appellate Division held that marriages between persons of the same sex solemnized out of state are required to be recognized as valid under New York common law, even though the marriage could not have been solemnized within New York.  Of particular significance to defamation law – and to whether describing someone as gay will subject them to public hatred – the court determined that recognition of such marriages is not contrary to the common law exception to marriage recognition for those unions that would be abhorrent to New York public policy.  The court noted that this exception "has generally been limited to marriages

---

[9] Moreover, the cases cited in *Gallo* as authority for "imputation of homosexuality" as a category of statements that are slanderous per se are not consistent with *Liberman*, which only lists four categories.  *See Gallo*, 585 F. Supp. 2d at 549, citing *Tourge v. City of Albany*, 285 A.D.2d 785, 786 (3d Dep't 2001) and *Privitera v. Town of Phelps*, 79 A.D.2d 1, 3 (4th Dep't 1981), *appeal dismissed*, 53 N.Y.2d 796 (1981), *abrogated in part by Liberman*, 80 N.Y.2d at 435.  The Court of Appeals has not recognized "imputation of homosexuality" as a category.  *See Liberman*, 80 N.Y.2d at 435 (citing *Privitera*, but listing only *four* categories of statements that were slanderous per se).

involving polygamy or incest or marriages 'offensive to the public sense of morality to a degree regarded generally with abhorrence[,]' . . . and that cannot be said [of marriages between persons of the same sex]." *Id.* at 192 (citation omitted).

Many other appellate and lower courts throughout the State have concurred that out-of-state marriages between same-sex couples are subject to legal respect in New York. *See, e.g., Lewis v. N.Y. State Dep't of Civil Service*, __ A.D.3d ___, 872 N.Y.S.2d 578, 584 (3d Dep't 2009) (upholding authority of New York State Dep't of Civil Service to respect marriages of same-sex couples); *Godfrey v. DiNapoli*, 22 Misc. 3d 249, 252 (Sup. Ct. Albany County 2008) (upholding State Comptroller's authority to provide that Canadian marriages of same-sex couples are to be recognized for purposes of State Retirement System); *Golden v. Paterson*, 22 Misc. 3d 1127(A), 2008 WL 5672288, at *8 (Sup. Ct. Bronx County Sept. 2, 2008) (upholding lawfulness of directive from Governor Paterson's counsel requiring all state agencies to review their operations to ensure respect to marriages of same-sex couples to fullest extent of the law).

The many decisions concluding that recognition of the marriages of lesbians and gay men does not offend New York public policy reached that conclusion after evaluating the current status of gay men and lesbians in New York. *See, e.g., Golden*, 22 Misc. 3d 1127(A), 2008 WL 5672288, at *6-8 (summarizing judicial, legislative and executive decisions and policies respecting the rights of lesbian and gay New Yorkers and concluding that recognition of out-of-state marriages of same-sex couples is consistent with New York law and public policy). These cases are more reliable indicators of how the Court of Appeals would rule on the underlying premise of Plaintiff's defamation per se claim – that is, whether gay men and lesbians are held in "public contempt, ridicule, aversion or disgrace." *See Rinaldi*, 42 N.Y.2d at 379; *Kimmerle*, 262 N.Y. at 102.

**D. Other persuasive authorities indicate that statements describing a person as gay are not defamatory per se.**

The New York Legislature has also acted to promote the equality of, and to forbid acts of prejudice and hostility against, lesbians and gay men. New York's Human Rights Law was amended in 2002 to prohibit discrimination because of sexual orientation in employment, public accommodations, and housing. N.Y. Exec. Law § 296. *See also* N.Y. Educ. Law § 313 (equal educational opportunity without regard to, *inter alia*, sexual orientation). New York's hate crimes law provides for increased severity of punishment of crimes against victims selected because of, *inter alia*, sexual orientation. N.Y. Penal Law § 485.00 *et seq.* These laws speak to the public policy consensus that has rejected, and now opposes, acts based on animus toward lesbians and gay men.[10]

On June 19, 2007, the New York State Assembly passed (85 votes to 61) legislation, initiated by the Governor, to grant same-sex couples the right to marry in New York. *See* Rick Karlin, *One 'I Do' for Gay Marriage*, Times Union (Albany, N.Y.), June 20, 2007, at A1. Although the Senate has not yet acted on that legislation, the measure's support in the Assembly and from the Governor demonstrate that the day is far past when identifying a person as gay could be deemed defamation per se.[11]

In May 2008, New York's Governor issued a directive to all state agencies directing them to review state agency policy statements to ensure recognition of out-of-state marriages between spouses of the same sex. *See Golden*, 22 Misc. 3d 1127(A), 2008 WL 5672288, at *8 (affirming

---

[10] The Legislature has also enacted, with executive approval, measures to provide same-sex domestic partners with legal rights and benefits otherwise reserved to spouses. *See, e.g.*, N.Y. Pub. Health Law § 2805-q (granting domestic partners rights of visitation with partner when such rights are accorded to spouses and next-of-kin at hospitals, nursing homes or health care facilities); N.Y. Pub. Health Law § 4201 (granting domestic partners ability to make decisions about funerals of their partners).

[11] One need only read the weekly newspaper announcements of marriages and other unions of same-sex couples, printed alongside those of different-sex couples, to recognize that being identified as in a relationship with a person of the same sex now is seen as cause for pride and celebration, not stigma and shame.

14

Governor's authority to do so, noting public policy support for recognition of out-of-state marriages). These marriages are now uniformly respected by the State government. *See* Lambda Legal et al., *Your Government Respects Your Marriage: Developments in New York State Agency Recognition of Same-Sex Couples' Out-of-State Marriages*, *available at* http://data.lambdalegal.org/publications/downloads/fs_your-government-respects-your-marriage.pdf (last visited Mar. 13, 2009). For example, the State Department of Civil Service requires recognition of these marriages for purposes of spousal health insurance coverage for public employees. *See Lewis*, 872 N.Y.S.2d at 584 (upholding authority of New York State Dep't of Civil Service to respect marriages of same-sex couples). The State Comptroller also explicitly recognizes these marriages for purposes of retirement benefits. *See Godfrey v. DiNapoli*, 22 Misc. 3d at 252 (upholding authority of Comptroller to recognize marriages of same-sex couples). *See also Godfrey v. Spano*, 57 A.D.3d 941, 943 (2d Dep't 2008) (upholding Westchester County Executive Order respecting marriages of same-sex couples).

Gay men and lesbians and their relationships long have been accorded respect and protections in New York in many other contexts as well. All three branches of State government provide benefits to domestic partners of State employees, as do numerous local governments, including New York City. *See* Richard Perez-Pena, *Bruno Agrees on Domestic Partner Benefits*, N.Y. Times, Jan. 20, 2001, at B4. Numerous private sector employers also prohibit discrimination against gay men and lesbians; for example, as of 2008, 473 (94.6%) of the Fortune 500 companies did so. *See* Equality Forum, *Fortune 500 Project*, *available at* http://www.equalityforum.com/fortune500/index.cfm (last visited Mar. 13, 2009) (listing companies that provide sexual orientation discrimination protection as of 2008).

Moreover, there are at least 40 openly gay or lesbian elected or appointed officials in government service in New York, including judges in the federal and state courts, state legislators, mayors, and city council members – such as the Speaker of the New York City Council, Christine Quinn.  *See* Gay & Lesbian Leadership Institute, *Openly LGBT Elected or Appointed Officials*, *available at* http://www.glli.org/out_officials/officials_map (select North America, then New York) (last visited Mar. 13, 2009).  A holding that identifying a person as gay is defamatory per se would require concluding that these many openly lesbian and gay public servants are held in "public hatred [and] shame" because of their sexual orientation.  *Kimmerle*, 262 N.Y. at 102.  That manifestly is not the case.

It is inconceivable that the Court of Appeals today would hold that gay men and lesbians are the subject of public hatred, ridicule, aversion or contempt – and equally inconceivable for that Court to hold that statements describing someone as gay or lesbian are defamatory per se. As one court recently concluded after summarizing numerous indicators demonstrating that New York public policy did not prohibit recognition of the marriages of same-sex couples:

> Surely the Legislature, the majorities of the Court [of] Appeals in *Braschi* and *Jacob,* and its Chief and Associate Judges, albeit in dissent, in *Hernandez* were not so out of the mainstream as to contradict New York's public policy and morality.  These expressions of New York's public policy are only consistent with a tradition of affording equal rights to all New Yorkers, a tradition not to be abandoned lightly[.]

*Golden*, 22 Misc. 3d 1127(A), 2008 WL 5672288, at *8.

"Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."  *Palmore*, 466 U.S. at 433, 104 S. Ct. at 1882.  If Plaintiff had been incorrectly described as African-American and sued for defamation, his claim today would be quickly dismissed, *see Johnson*, 13 Misc. 3d 1215(A), 2004 WL 4986754, at *6, even though New York law would have recognized such a claim in the past, *see Sydney,* 242 N.Y. at 213-14,

16

and even though society has not completely eradicated racial prejudice.  Recognition of such a claim would validate biases that have been rejected as a matter of law and public policy.  *See Albright*, 321 F. Supp. 2d at 138-39 (comparing statement that plaintiff is homosexual "to statements falsely linking a plaintiff to racial, ethnic or religious groups, which plainly would not qualify as defamation per se today").  Similarly, the court should reject Plaintiff's claim that being described as gay was defamatory per se.

## CONCLUSION

For the foregoing reasons, *amicus* respectfully submits that this Court should hold that it is not defamatory per se to describe someone as gay or lesbian.


Dated: March 13, 2009
       New York, New York

                              LAMBDA LEGAL DEFENSE AND
                                 EDUCATION FUND, INC.


                              By:   /s/  Thomas W. Ude, Jr.
                                 Thomas W. Ude, Jr. (tu0717)
                                 Lambda Legal Defense and
                                    Education Fund, Inc.
                                 120 Wall St., Suite 1500
                                 New York, NY  10005
                                 (212) 809-8585
                                 tude@lambdalegal.org

                                 *Attorney for Amicus Curiae Lambda Legal
                                    Defense and Education Fund, Inc.*

17