UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HOWARD K. STERN, )
)
)
            Plaintiff, )
) No. 07-CV-8536 (DC)
   v. )
)
RITA COSBY and HACHETTE BOOK GROUP )
USA, INC. d/b/a Grand Central Publishing, and )
JOHN or JANE DOE, )
)
           Defendants. )
)

---

# DEFENDANT HACHETTE BOOK GROUP USA, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Douglass B. Maynard
Deborah J. Newman
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000
dmaynard@akingump.com

Karen E. Andrews
Hachette Book Group USA, Inc.
237 Park Avenue
New York, NY 10017
(212) 364-1560

*Counsel for Defendant Hachette Book Group USA, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.   HACHETTE DID NOT PUBLISH WITH ACTUAL MALICE ..........................................1

        A.  Hachette Reasonably Relied On Ms. Cosby's Investigation .............................................1

        B.  The Libel Review Conducted By Outside Counsel Is Not Evidence of Hachette's Actual Malice ..........................................................................2

            1.  Ms. Cowen's State of Mind Cannot be Imputed to Hachette .................................3

            2.  There is No Evidence That Ms. Cowen Acted With Actual Malice ........................3

        C.  Plaintiff's Allegations Regarding Hachette's Conduct Do Not Show Actual Malice .......6

            1.  Hachette's Desire That the Book Contain Newsworthy Items Is Not Evidence of Actual Malice ............................................6

            2.  Hachette's Knowledge of Some of Ms. Cosby's Sources is Not Evidence of Actual Malice ..........................................................7

            3.  Ms. Einhorn's Manuscript Notation is Not Evidence of Actual Malice ..................8

            4.  Hachette's Post-Publication Conduct Is Not Evidence of Actual Malice ................9

    II.  PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED ..........10

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) ...... 9

*Bressler v. Fortune Magazine*, 971 F.2d 1226 (6th Cir.1992) ...... 5

*Coliniatis v. Dimas*, 965 F. Supp. 511 (S.D.N.Y. 1997) ...... 5

*D.A.R.E. America v. Rolling Stone Magazine*, 101 F.Supp.2d 1270 (C.D. Cal.2000) ...... 9

*Edwards v. National Audubon Soc'y, Inc.*, 556 F.2d 113 (2d Cir. 1977) ...... 5

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ...... 5, 10

*J.H. Desnick M.D. Eye Servs., Ltd. v. American Broadcasting Co.*, 233 F.3d 514 (7th Cir. 2000) ...... 5

*Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85 (S.D.N.Y. 1980) ...... 6-7

*Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350 (N.D. Cal. 1993) ...... 3

*McFarlane v. Esquire Magazine*, Civ. No. 92-0711, 1994 U.S. Dist. LEXIS 9497 (D.D.C. June 8, 1994) ...... 8

*Mcfarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996) ...... 3, 7, 9

*McFarlane v. Esquire Magazine*, 22 Media L. Rep. 2033 (D.D.C. 1994) ...... 7

*McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996) ...... 7

*McManus v. Doubleday & Co.*, 513 F. Supp. 1383 (S.D.N.Y. 1981) ...... 2

*Murray v. Bailey*, 613 F. Supp. 1276 (N.D. Cal. 1985) ...... 3

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...... 9

*Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991) ...... 7

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ...... 1, 5, 7

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ...... 5, 6, 7, 8

*Time, Inc. v. Pape*, 401 U.S. 279 (1971) ...... 5

*Westmoreland v. CBS, Inc.*, 601 F. Supp. 66 (S.D.N.Y 1984) ...... 9

## STATE CASES

*Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466 (1993) ..........10

*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369 (1977) ..........2

## STATUTES AND RULES

Cal. Prob. Code § 9600 (West 1991) ..........5

NY EPTL § 11-2.3 (McKinney 2008) ..........5

NY EPTL § 11-A-1.3 (McKinney 2008) ..........5

Defendant Hachette Book Group USA, Inc. ("Hachette") respectfully submits this reply memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

Despite many months of rigorous discovery, Plaintiff has failed to meet his burden of pointing to specific, clear and convincing evidence that Hachette employees knew that any of the challenged statements were false, or actually entertained serious doubts as to their truth. *See, e.g, St. Amant v. Thompson,* 390 U.S. 727, 731 (1968). There is no such evidence, and so Plaintiff resorts to distorting deposition testimony, mischaracterizing documents, and misrepresenting the law in a desperate attempt to keep Hachette in the case.[1] Plaintiff ignores the constitutional mandate that actual malice may be shown only through the knowledge and conduct of a corporate defendant's employees; misrepresents the libel review conducted by Hachette's outside counsel; repeatedly alleges that Hachette had knowledge of falsity without citing to any evidence in the record; and disregards well-settled law holding that a publisher's desire for newsworthy information, and reliance on an author's evaluation of her sources, is not evidence of actual malice. None of Plaintiff's arguments defeat Hachette's motion for summary judgment.

## ARGUMENT

### I. HACHETTE DID NOT PUBLISH WITH ACTUAL MALICE

#### A. Hachette Reasonably Relied On Ms. Cosby's Investigation

Plaintiff asserts in his brief ("Opp. Br.") that "Hachette took it upon itself to investigate [Ms. Cosby's] sources, uncovered serious concerns and reasons to doubt their credibility, and purposely chose not to investigate further." Opp. Br. p. 73. This assertion is without any support

---

[1] Plaintiff cannot in good faith deny the material facts set forth in Hachette's Rule 56.1 Statement ("H. 56.1"), and instead repeatedly disputes the facts "as phrased," or cites to evidence that does not call them into question. Plaintiff's Rule 56.1 Response makes a mockery of the rule, which is intended to narrow the issues for the Court. Each material fact that is not "specifically controverted" by Plaintiff with supporting evidence should be deemed admitted. Local Rule 56.1. Hachette has not submitted a response to Plaintiff's own Statement of Material Facts because Local Rule 56.1 does not require one. To the extent the allegations set forth in Plaintiff's Statement are material to the determination of Hachette's motion, they are addressed in this memorandum.

1

in the record. At all. Plaintiff does not even attempt to cite to any. *See id.* It is undeniable that Hachette, a book publisher, did not conduct its own investigation, but relied instead on the research conducted by its author, Ms. Cosby, a highly respected journalist with extensive knowledge of the story and unique access to central participants.[2] Einhorn Aff. ¶¶ 4, 5, 6, 8, 9, 13, 23, Exh. A; Hoffman Aff. ¶¶ 4, 6; Pockell Dep. 32; Raab Dep. 45;[3] *see* Hoffman Dep. 165:24-166:22.[4]

Hachette's reliance upon Ms. Cosby is not evidence of actual malice. A book publisher is "entitled as a matter of law" to rely on an author's "reputation[] and experience," and there is no actual malice where it publishes a book by an author it believes to be reliable. *McManus v. Doubleday & Co.*, 513 F. Supp. 1383, 1390 (S.D.N.Y. 1981); *accord, e.g., Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 383 (1977). Indeed, courts have found that a publisher who relied on an author's "proven reportorial ability" is entitled to summary judgment even where "serious factual questions concerning the credibility" of the author and his source preclude summary judgment for the author. *McManus*, 513 F. Supp. at 1389-90.

### B. The Libel Review Conducted By Outside Counsel Is Not Evidence of Hachette's Actual Malice

In the face of the unequivocal evidence that Hachette did not conduct its own

---

[2] Plaintiff purports to "dispute[] as phrased" Hachette's assertions in its 56.1 Statement that Ms. Cosby's book proposal "described her experience covering the Anna Nicole Smith story as a journalist for MSNBC and described her experience covering the story from the media 'frontline,' her unique access to 'the players in the unfolding drama,' and her unrivaled knowledge of 'previously unreported details,'" on the ground that "Cosby's initial proposal for the book . . . focused on Cosby's role in the Anna Nicole media frenzy, and that the citation to the record is not sufficient." *See* H. 56.1 and Plaintiff's Response to Hachette's 56.1 Statement ("P. 56.1 Resp."), ¶¶ 4. The inclusion of this information in the book proposal, however, is evident from the face of the document. Similarly, Plaintiff purports to "dispute[] as phrased" Hachette's assertion that the background information it received with the book proposal listed Ms. Cosby's various awards, and information regarding her experience in journalism, including leading a division of MSNBC that covered major news events, serving as the primary anchor of MSNBC Investigates, and conducting exclusive interviews of world leaders, on the ground that "Shuster sent Einhorn press materials regarding Cosby, some of which included Cosby's own description of her work at MSNBC." *See id.* ¶¶ 5-6. Again, the fact that this information was provided to Hachette is evident from the face of the documents and cannot in good faith be denied.

[3] Excerpts of Mr. Pockell's and Ms. Raab's deposition transcripts are attached as Exhibits B and C, respectively, to the Affidavit of Deborah Newman filed in support of Hachette's moving brief ("1st Newman Aff.").

[4] Pages 24 and 165-166 of Mr. Hoffman's deposition transcript are attached as exhibit B to the Affidavit of Deborah Newman filed in support of this reply brief ("2nd Newman Aff.").

investigation, Plaintiff mischaracterizes the libel review conducted by Linda Cowen, Hachette's outside counsel, as an "investigation," and argues that Ms. Cowen's supposed knowledge and conduct provide circumstantial evidence of Hachette's reckless disregard for the truth. This argument fails.

### 1. Ms. Cowen's State of Mind Cannot be Imputed to Hachette

To begin with, Ms. Cowen's state of mind cannot be imputed to Hachette. As Plaintiff concedes, Ms. Cowen was Hachette's "freelance outside counsel," and thus their relationship was one of agency rather than employment. Opp. Br. p. 70. This is fatal for Plaintiff's argument. The "constitutional mandate of *New York Times v. Sullivan* prohibits liability based solely upon an agency relationship." *Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1373 (N.D. Cal. 1993); *see Murray v. Bailey*, 613 F. Supp. 1276, 1281 (N.D. Cal. 1985) ("The stringent standards required by the First Amendment make application of agency theory inappropriate."); *Mcfarlane v. Esquire Magazine*, 74 F.3d 1296, 1303 (D.C. Cir. 1996) ("[A]ctual malice is a First Amendment protection predicated on a subjective state of mind, which surely cuts against any extension of vicarious liability beyond respondeat superior."). Accordingly, a publisher's alleged actual malice may be shown "only through evidence of the information available to, and conduct of, its employees," *Mcfarlane*, 74 F.3d at 1303, and may not be imputed through independent outside counsel.

### 2. There is No Evidence That Ms. Cowen Acted With Actual Malice

Even if Ms. Cowen's state of mind could be imputed to Hachette – which it cannot – there is no evidence that Ms. Cowen entertained any doubts about the truth of any of the challenged statements. Plaintiff misrepresents the record, asserting that "Hachette's attorney was concerned enough about the allegations in *Blonde Ambition* that she required Cosby not only to deliver her source materials per the terms of the contract, but also to disclose the identity of every single confidential source and other confidential information." Opp. Br. p. 71. There is,

3

however, absolutely no evidence even suggesting the lawyer was in any way "concerned" about "the allegations." The evidence cobbled together by Plaintiff shows only that: (i) the publishing contract included a standard clause providing that "[t]he Author shall, at [her] sole expense, deliver to the Publisher all photographs, illustrations, drawings, charts, footnotes, source notes, bibliography and any other materials as mutually agreed upon," Einhorn Decl., Exh. C at ¶ 6(b)(i),

agreed

**REDACTED**

Plaintiff cites no evidence indicating that Ms. Cosby actually delivered source materials to Ms. Cowen (or anyone at Hachette),

**REDACTED**

Nor is there any evidence that Ms. Cowen "required" such information. Even if Plaintiff were able to show that Ms. Cosby did provide this information to Ms. Cowen, it would not indicate that Ms. Cowen entertained doubts about the challenged statements.

Plaintiff's assertion that "a reasonable juror could find that Hachette's attorney . . . acted in reckless disregard of the truth by not obtaining" the complaint Plaintiff filed against John O'Quinn is also unavailing. Opp. Br. p. 71.

**REDACTED**

. While the record is silent as to whether Ms. Cowen obtained a copy of the complaint, her alleged failure to do so cannot be imputed to Hachette, and is not "purposeful avoidance of the truth." "Purposeful avoidance" exists only in rare circumstances where a defamation defendant had "obvious reasons to doubt the veracity of

---

**REDACTED**

4

the informant or the accuracy of his reports," *and* failed to review key evidence that would have verified or contradicted the questionable information. *Compare Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691-2 (1989) *with Bressler v. Fortune Magazine*, 971 F.2d 1226, 1233 (6th Cir. 1992); *see also J.H. Desnick M.D. Eye Servs., Ltd. v. American Broadcasting Co.*, 233 F.3d 514, 520 (7th Cir. 2000). There is no evidence that Ms. Cowen had "obvious reasons" to doubt Ms. Cosby's reporting, and, as Plaintiff concedes, the complaint would merely have shown that Plaintiff denied statements made by Mr. O'Quinn. Opp. Br. p. 71. Knowledge of such a denial is not evidence of actual malice. *E.g., Edwards v. Nat'l Audobon Soc'y, Inc.*, 556 F.2d 113, (2d Cir. 1977); *Coliniatis v. Dimas*, 965 F. Supp. 511, 516 (S.D.N.Y. 1997).

Finally, Plaintiff's argument that Hachette's actual malice is shown by Ms. Cowen's failure to delete the statement that Plaintiff "would at his discretion determine how the funds of Anna's estate would be divided and utilized" also fails. Opp. Br. p. 72. Plaintiff's conclusory assertion that "[a]ny attorney" would have known that the statement was "contrary to the law of any state" is wholly unsupported, especially given that an executor's powers include investing and managing estate property, NY EPTL § 11-2.3 (McKinney 2008), and the ability to "administer [an] estate by the exercise of a discretionary power of administration given to the fiduciary by the terms of the . . . will." *Id.* § 11-A-1.3.[7] There is no evidence indicating that Ms. Cowen actually doubted the truth of this statement, or should have.[8]

---

[7] Similarly, Section 9600 of the California Probate Code states that an executor "has the management and control of the estate." Cal. Prob. Code § 9600 (West 1991).

[8] Even assuming that Ms. Cowen's failure to delete this language did, as Plaintiff alleges, constitute a "lack of concern," Opp. Br. p. 72, such alleged carelessness does not amount to "reckless disregard for the truth," which requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) (Ginsberg, concurring); *Time, Inc. v. Pape*, 401 U.S. 279, 291 (1971) ("Errors of fact caused by negligence" are constitutionally protected, and do not support a finding of recklessness.); *see also St. Amant*, 390 U.S. at 731; *Harte-Hanks Commc'ns*, 491 U.S. at 688.

### C. Plaintiff's Allegations Regarding Hachette's Conduct Do Not Show Actual Malice

#### 1. Hachette's Desire That the Book Contain Newsworthy Items Is Not Evidence of Actual Malice

Plaintiff's assertion that Ms. Einhorn's "'holy shit' exhortation" is evidence of actual malice is without merit. Opp. Br. p. 70. Plaintiff again distorts the record, falsely stating that "Hachette only agreed to a book deal if Cosby could come up with additional unbelievable information." *Id.* In truth, Hachette's offer was conditioned upon "additional newsworthy revelations (other than those already disclosed in conversations between the Publisher and the Author)." Einhorn Aff. Exh. C. It is indisputable that Ms. Cosby informed Hachette *before* the contract was signed that, based on her prior reporting, the book would have a number of previously unreported explosive news items.

**REDACTED**

*see also* Einhorn Aff. ¶ 13. Moreover, there is no evidence that Hachette doubted the two "holy shit" items it learned before purchasing the book, or that it sought "unbelievable" information. In fact, the undisputed evidence is to the contrary. Einhorn Aff. ¶ 17; Hoffman Aff. ¶¶ 10-14. The publishing contract itself required Ms. Cosby to warrant that all statements in the book as published would be true or based on reasonable research for accuracy.[10] Einhorn Aff ¶ 19, Exh. C. Courts have repeatedly held that "an inference of 'reckless disregard' drawn from evidence of managerial pressure to produce high-impact stories is not permissible" where, as here, the plaintiff cannot also show that such pressure was made with "*little or no regard for their accuracy.*" *Tavoulareas*, 817 F.2d at 797 (emphasis in original); *see Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93

**REDACTED**

---

[10] Plaintiff purports to "dispute[] as phrased" Hachette's assertion in its 56.1 Statement that Ms. Cosby's contract contains such a warranty, arguing that the contract "contained a boilerplate warranties section that is irrelevant to the question of whether Cosby and Hachette published *Blonde Ambition* with serious doubts as to the truth of the statements contained therein." *See* H. 56.1; P. 56.1 Resp. ¶ 28. The warranty in Ms. Cosby's contract, however, is undeniably evident from the face of the document.

6

(S.D.N.Y. 1980); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991).

Plaintiff is thus reduced to relying on a dissenting opinion, and even that reliance is misplaced. Judge Mackinnon's dissent in *Tavoulareas* does not argue "that a question of actual malice arises 'whenever a libel plaintiff introduces evidence that the newspaper vigorously pursues high-impact stories of alleged wrongdoing,'" but merely that "evidence of *extreme* pressure for sensationalistic stories may be probative of . . . whether a reporter was thereby motivated to deal recklessly with the facts." *Tavoulareas*, 817 F.2d at 835 n. 48 (emphasis added). Hachette's unremarkable condition that the book be newsworthy is not evidence of any "extreme pressure."

### 2. Hachette's Knowledge of Some of Ms. Cosby's Sources is Not Evidence of Actual Malice

Hachette's knowledge – based on draft manuscripts and the book, not its own investigation – that "private investigators hired by an interested party" were sources for certain statements, *Blonde Ambition* p. 2, and that Jackie Hatten was a source for the book's depiction of a sexual act between Mr. Stern and Mr. Birkhead, *id.* p. 202-3, is not evidence of actual malice. The Hachette editors have stated unequivocally that they did not doubt Ms. Cosby's reliance on her sources. Einhorn Aff. ¶ 27; Hoffman Aff. ¶ 13; *see* Hoffman Dep. 165:24-166:22. As set forth in Hachette's moving brief, a defendant's reliance on "a single source who may have been biased or unreliable" is not sufficient to support a finding of actual malice. *See, e.g., St. Amant*, 390 U.S. at 733; *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996); *McFarlane v. Esquire Magazine*, 22 Media L. Rep. 2033 (D.D.C. 1994). This is especially true where, as here, a publisher relies on a reporter's reputation. *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996).

Moreover, Plaintiff's assertion that "Hachette knew that Cosby had absolutely no corroboration" for the claims provided by the investigators and Ms. Hatten is demonstrably false.

7

Opp. Br. p. 71. The book itself shows that these witnesses were corroborated. For example, Ms. Hatten's report that she witnessed Plaintiff and Mr. Birkhead engaged in a sexual act was corroborated by the investigators' information regarding a videotape of Plaintiff and Mr. Birkhead having sex. *Blonde Ambition* p. 204. And Ms. Hatten's description of Daniel Smith's concern that Plaintiff was "pimping" his mom was corroborated by Jack Harding. *Id.* p. 31.

### 3. Ms. Einhorn's Manuscript Notation is Not Evidence of Actual Malice

**REDACTED**

, it does *not* show actual malice with respect to any of the challenged statements. "Defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false, defamatory statement." *Tavoulareas*, 817 F.2d at 794 (emphasis in the original); *McFarlane v. Esquire Magazine*, Civ. No. 92-0711, 1994 U.S. Dist. Lexis 9497, at *35 (D.D.C. June 8, 1994).

**REDACTED**

, which Plaintiff does not allege to be false or defamatory, and not to any challenged statement. Plaintiff fails to point to any evidence indicating that Hachette entertained any doubts that Plaintiff used cocaine, and gave Ms. Smith cocaine while she was pregnant — the only challenged statements for which the employee confidante is a source.

8

### 4.  Hachette's Post-Publication Conduct Is Not Evidence of Actual Malice

Unable to find any evidence of malice in Hachette's publication of the book, Plaintiff attempts to conjure malice based on "Hachette's post publication actions." Opp. Br. p. 73. But post-publication events are not evidence of actual malice. *See, e.g., Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984) (evidence must establish that defendant "realized the inaccuracy at the time of publication"). Moreover, Plaintiff's assertions are wholly unsupported and contrary to law. Plaintiff asserts that "Hachette specifically marketed the book based on the allegations of defamation and falsity," but there is absolutely no evidence that Hachette believed the book was false and defamatory, and a publisher's efforts to highlight newsworthy portions of a book, even where they are "one sided" or set forth "categorical accusations," are not evidence of actual malice. *Westmoreland v. CBS, Inc.*, 601 F. Supp. 66, 68 (S.D.N.Y. 1984); *see McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1307 (D.D.C. 1996). Similarly, Plaintiff alleges that Hachette decided "not to issue a retraction letter despite knowledge that portions of the book, such as the sex videotape and will allegations, were definitively false," but there is no evidence that Hachette had any knowledge of falsity. Opp. Br. p. 73. Plaintiff does not even attempt to cite to any. *Id.* This destroys Plaintiff's argument, as a publisher's refusal to retract a statement it believed to be true is not evidence of actual malice. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964); *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000).

**REDACTED**

Even assuming such an intent, a desire to create publicity

9

for a book is not evidence of actual malice, see, e.g., *Harte-Hanks*, 491 U.S. at 667 (1989), and the emails do not show that Hachette had any doubts about the challenged statements.[11]

## II. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiff's claim for punitive damages should be dismissed. He has failed to find any of the required evidence that Hachette acted with "hatred, ill will, spite, criminal mental state or that traditionally required variety of common-law malice." *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 480 (1993). Plaintiff's half-hearted effort amounts to the conclusory allegation, without any citation to the record, that Hachette acted with "ill will" because it published the book "even though [it] knew many of the allegations [it was] publishing were false or probably false." Opp. Br. p. 74. There is no evidence to support this assertion.

## CONCLUSION

For the forgoing reasons, Hachette's motion for summary judgment should be granted.[12]

Dated:   New York, New York
         March 13, 2009

                              AKIN GUMP STRAUSS HAUER & FELD LLP

                              By: _____
                                  Douglass B. Maynard
                                  Deborah J. Newman
                                  One Bryant Park
                                  New York, New York 10036
                                  (212) 872-1000
                                  dmaynard@akingump.com

                                  Karen E. Andrews
                                  Hachette Book Group USA, Inc.
                                  237 Park Avenue
                                  New York, New York 10017
                                  (212) 364-1560

                                  *Counsel for Defendant Hachette Book Group USA, Inc.*

**REDACTED**

---

[12] Hachette adopts and joins in the arguments made by defendant Rita Cosby in her reply memorandum.

## CERTIFICATE OF SERVICE

I, Deborah J. Newman, hereby certify that on this 13th day of March, 2009, I caused: (i) a true and correct copy of the foregoing Reply Memorandum of Law in Support of Hachette Book Group USA, Inc.'s Motion for Summary Judgment, and Affidavit of Deborah Newman with accompanying exhibits, with confidential material contained therein redacted pursuant to the Amended Consent Protective Order Governing Confidential and Highly Confidential Information So Ordered by the Court on July 2, 2008 and the Order of the Court dated December 11, 2008, to be served by electronic filing with the District Court for the Southern District of New York, (ii) a true and correct unredacted copy of the foregoing materials to be filed under seal with the Court, and (iii) true and correct redacted and unredacted copies of the foregoing materials to be served by electronic mail on L. Lin Wood, Esq., Powell Goldstein LLP, Fourteenth Floor, 201 W. Peachtree Street, NW, Atlanta, Georgia 30309, counsel for Plaintiff Howard K. Stern, and Elizabeth McNamara, Davis Wright Tremaine LLP, 1633 Broadway, New York, New York 10019, counsel for Defendant Rita Cosby.

_____
Deborah J. Newman